1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARIA M. CAMACHO,                    )    Case No. EDCV  12-1155 JC
                                     )
                    Plaintiff,       )
                                     )    MEMORANDUM OPINION AND
          v.                         )    ORDER OF REMAND
                                     )
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social               )
Security,                            )
                                     )
                    Defendant.       )
_____ )

## I.    SUMMARY

On July 17, 2012, plaintiff Maria M. Camacho ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have consented to proceed before a
United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; July 23, 2012 Case Management Order ¶ 5.

///
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On May 11, 2007, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 185). Plaintiff asserted that she became disabled on September 23, 2002, due to an injury to her shoulders and neck, pain in the arms and hands, diabetes, high blood pressure, depression, anxiety, insomnia, pain in her knees and left shoulder, and cervical fusion. (AR 199). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) on April 27, 2009. (AR 30-43). On July 20, 2009, the ALJ determined that plaintiff was not disabled through December 31, 2007 (*i.e.*, plaintiff's "date last insured"). (AR 64-71)

On March 18, 2010, the Appeals Council granted review, vacated the ALJ's July 20, 2009 decision, and remanded the matter for further administrative proceedings. (AR 74–76). The ALJ again examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 2, 2010. (AR 44-58).

On August 26, 2010, the ALJ again determined that plaintiff was not disabled through December 31, 2007.[1] (AR 18-25). Specifically, the ALJ found that through the date last insured: (1) plaintiff suffered from the following severe impairments: cervical disc disease, status post C4-5-6 spinal fusion; impingement syndrome, bilateral shoulders; bilateral elbow lateral epicondylitis; history of lumbosacral sprain/strain; and history of nonverifiable left lower extremity

---

[1]The ALJ stated that his July 20, 2009 decision was incorporated by reference into, and supplemented by, his August 26, 2010 decision. (AR 18).

1   radiculitis with chronic left sacroiliac sprain (AR 20); (2) plaintiff suffered from

2   the following nonsevere impairments:  obesity, depression, and anxiety (AR 20);

3   (3) plaintiff's impairments, considered singly or in combination, did not meet or

4   medically equal a listed impairment (AR 20); (4) plaintiff retained the residual

5   functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with

6   additional nonexertional limitations[2] (AR 21); (5) plaintiff could not perform her

7   past relevant work (AR 23); (6) there are jobs that exist in significant numbers in

8   the national economy that plaintiff could perform, specifically assembler, table

9   worker and packer/operator (AR 24); and (7) plaintiff's allegations regarding her

10  limitations were not credible to the extent they were inconsistent with the ALJ's

11  residual functional capacity assessment (AR 23).

12      On May 24, 2012, the Appeals Council granted plaintiff's application for

13  review of the ALJ's August 26, 2010 decision and essentially affirmed the ALJ's

14  determination that plaintiff was not disabled through December 31, 2007.  (AR 3-

15  5, 7).  Specifically, the Appeals Council:  (1) agreed with the ALJ's findings at

16  steps 1, 3, 4 and 5 of the sequential evaluation process (*i.e.*, that plaintiff (a) had

17  not engaged in substantial gainful activity since September 23, 2002; (b) had

18  severe impairments which did not meet or equal in severity a listed impairment;

19  (c) was unable to return to her past relevant work; and (d) was capable of

20  performing other jobs in the national economy) (AR 3); (2) found that through the

21  date last insured plaintiff suffered from the following severe impairments:  status

22  post C4-5-6 spinal fusion, impingement syndrome (bilateral shoulder), bilateral

23  elbow lateral epicondylitis, history of lumbosacral sprain/strain, obesity, and

24  history of nonverifiable left lower extremity radiculitis with chronic left sacroiliac

25  ///

26

27      [2]The ALJ determined that plaintiff could perform light work as defined in 20 C.F.R.
    § 404.1567(b), but with occasional pushing or pulling with both arms, frequent reaching, and no
28  above-shoulder level work with both arms.  (AR 21).

1  sprain (AR 4);[3] (3) adopted the ALJ's finding that plaintiff retained the residual

2  functional capacity to perform a reduced range of light work (AR 4, 7) (citing ALJ

3  Finding 5, page 4 [AR 21]);[4] and (4) using Rule 201.10 of the Medical-Vocational

4  Guidelines as a framework, found that there are other jobs in the national economy

5  that plaintiff could perform (AR 4).

6       The Appeals Council's decision constituted the Commissioner's final

7  decision in plaintiff's case. See 20 C.F.R. § 404.981; Debbs v. Astrue, 2012 WL

8  5544077, *13 n.9 (E.D. Cal. Nov. 14, 2012) (The Appeals Council's decision

9  becomes the final decision of the Commissioner where the Appeals Council grants

10 review and issues a decision on the merits.) (citing Russell v. Brown, 856 F.2d 81,

11 83-84 (9th Cir. 1988)).

12 **III.    APPLICABLE LEGAL STANDARDS**

13      **A.    Sequential Evaluation Process**

14      To qualify for disability benefits, a claimant must show that the claimant is

15 unable "to engage in any substantial gainful activity by reason of any medically

16 determinable physical or mental impairment which can be expected to result in

17 death or which has lasted or can be expected to last for a continuous period of not

18 less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

19 (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

20 impairment must render the claimant incapable of performing the work claimant

21 previously performed and incapable of performing any other substantial gainful

22 _____

23      [3]Unlike the ALJ, the Appeals Council also found obesity to be one of plaintiff's severe
   impairments. (AR 3-4).  The Appeals Council concluded, however, that plaintiff's obesity did
24 not impose limitations on plaintiff's ability to work beyond those already accounted for in the
   ALJ's residual functional capacity assessment for plaintiff.  (AR 3-4).
25

26      [4]Specifically, the Appeals Council determined that plaintiff (i) could lift and carry 20
   pounds occasionally and 10 pounds frequently; (ii) could stand for six hours in an eight-hour
27 workday and sit for less than six hours in an eight-hour workday; (iii) could occasionally push or
   pull with both arms; (iv) could frequently reach; and (v) could not perform work above shoulder
28 level with both arms.  (AR 4, 7) (citing ALJ Finding 5, page 4 [AR 21]).

employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); <u>see also</u> <u>Molina</u>, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing <u>Tackett</u>, 180 F.3d at 1098); <u>see also</u> <u>Burch</u>

///

5

1 v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
2 proving disability).

3       **B.**    **Standard of Review**

4       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
5 benefits only if it is not supported by substantial evidence or if it is based on legal
6 error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
7 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
8 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable
9 mind might accept as adequate to support a conclusion." Richardson v. Perales,
10 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a
11 mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing
12 Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

13       To determine whether substantial evidence supports a finding, a court must
14 "'consider the record as a whole, weighing both evidence that supports and
15 evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.
16 Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
17 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming
18 or reversing the ALJ's conclusion, a court may not substitute its judgment for that
19 of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

20 **IV.**   **DISCUSSION**

21       Plaintiff asserts that the ALJ erred at step five because the requirements of
22 the representative jobs identified by the vocational expert exceed plaintiff's
23 abilities. (Plaintiff's Motion at 4-6). The Court agrees that in the Appeals
24 Council's May 24, 2012 decision, the Commissioner erred in finding at step five
25 of the sequential evaluation process that plaintiff was capable of performing work
26 that is available in significant numbers in the national economy. As the Court
27 cannot find that the error was harmless, a remand is warranted.

28 ///

### A.   Pertinent Law

At step five of the sequential evaluation process, the Commissioner has the burden to demonstrate that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience.  Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, by obtaining testimony from an impartial vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Tackett, 180 F.3d at 1100-01 (citations omitted).

### 1.   Vocational Expert Testimony

At an administrative hearing, an ALJ may seek testimony from a vocational expert as to "(1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy."  Tackett, 180 F.3d at 1101.  The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 404.1566(d)(1) (DOT is source of reliable job information).  The DOT

is the presumptive authority on job classifications. <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p). In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." <u>Pinto v. Massanari</u>, 249 F.3d 840, 846 (9th Cir. 2001) (quoting <u>Johnson</u>, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. <u>Light v. Social Security Administration</u>, 119 F.3d 789, 793 (9th Cir.), <u>as</u> <u>amended</u> (1997) (citations omitted).

## 2. The Grids

There are "strict limits" on when the Commissioner may use the Grids to satisfy his burden at step five. <u>Desrosiers v. Secretary of Health & Human Services</u>, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring). An ALJ may rely on the Grids, rather than seek vocational expert testimony, only when the Grids "*completely and accurately* represent a claimant's limitations." <u>Tackett</u>, 180 F.3d at 1101 (emphasis in original); <u>see also</u> <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001) ("If the grids accurately and completely describe a claimant's impairments, an ALJ may apply the grids instead of taking testimony from a vocational expert.") (citation omitted). The Grids "completely and accurately" represent a claimant's limitations only when the claimant retains the ability to perform "the *full range* of jobs in a given [exertional] category, i.e., sedentary work, light work, or medium work." <u>Tackett</u>, 180 F.2d at 1101 (emphasis in original). Thus, for example, when a claimant suffers only exertional (strength-related) limitations, the ALJ <u>must</u> consult the Grids. <u>Lounsbury v.</u>

8

1    Barnhart, 468 F.3d 1111, 1115 (9th Cir.), as amended (2006).  Conversely, when a

2    claimant suffers only non-exertional limitations, the Grids (which are predicated

3    solely on a claimant's exertional limitations) are generally inappropriate and the

4    ALJ must rely on other evidence.  Id.

5          The mere allegation that a claimant has non-exertional limitations, however,

6    does not preclude the use of the Grids.  Desrosiers, 846 F.2d at 577.  Where, like

7    here, a claimant suffers from both exertional and non-exertional limitations, the

8    ALJ must first determine whether the Grids mandate a finding of disability with

9    respect to exertional limitations alone.  See Lounsburry, 468 F.3d at 1116; Cooper

10    v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the claimant must be

11    awarded benefits.  Cooper, 880 F.2d at 1155.  If not, a vocational expert's

12    testimony is not required unless the ALJ determines that "a claimant's

13    non-exertional limitations are 'sufficiently severe' so as to significantly limit the

14    range of work permitted by the claimant's exertional limitations" (i.e., the

15    claimant's non-exertional limitations prevent the claimant from being able to

16    perform the full range of sedentary, light, or medium work).  See Burkhart v.

17    Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (citation omitted) (when

18    non-exertional limitations "significantly limit the range of work permitted by the

19    claimant's exertional limitations . . . the Secretary must take the testimony of a

20    vocational expert . . . and identify specific jobs within the claimant's

21    capabilities.") (citations omitted); see also Hoopai v. Astrue, 499 F.3d 1071, 1076

22    (9th Cir. 2007) (An ALJ is required to seek the assistance of a vocational expert

23    when the non-exertional limitations are at a sufficient level of severity such as to

24    the make the Grids inapplicable to the particular case.) (citing id.); Desrosiers, 846

25    F.2d at 577 ("A non-exertional impairment, if sufficiently severe, may limit the

26    claimant's functional capacity in ways not contemplated by the guidelines.  In

27    ///

28    ///

such a case, the guidelines would be inapplicable.").[5]  It is within the ALJ's province to determine whether a claimant's non-exertional limitations are sufficiently severe such that testimony from a vocational expert would be required at step five.  Sam v. Astrue, 2010 WL 4967718, at *11 (E.D. Cal. Dec. 1, 2010) (citing Desrosiers, 846 F.2d at 577).

## B.   Analysis

Here, the Court cannot conclude that the Appeals Council's non-disability determination at step five is supported by substantial evidence and free of material error.

To the extent the Appeals Council relied solely on Rule 202.10 of the Grids to conclude that there was "a significant number of jobs in the national economy which [plaintiff] could perform" (AR 4), its non-disability determination at step five was based on legal error.  The Appeals Council essentially adopted the ALJ's residual functional capacity assessment and found that, after accounting for any limitations related to plaintiff's obesity (*i.e.*, the additional severe impairment found by the Appeals Council), plaintiff retained the ability to perform "a reduced range of light work."  (AR 4) (emphasis added).  The Appeals Council reiterated that "[plaintiff's] exertional and non-exertional impairments do not allow her to perform the full range of the light exertional level."  (AR 4) (emphasis added).  In light of such findings, the Appeals Council was required to obtain testimony from a vocational expert to satisfy the Commissioner's burden at step five.  See, e.g., Tackett, 180 F.3d at 1101-02 (ALJ may rely on Grids alone at step five only when claimant "[is] able to perform the *full range* of jobs in a given [exertional] category. . . .") (emphasis in original); Burkhart, 856 F.2d at 1340 (ALJ may rely solely on the Grids "[only] where the predicate for using the grids – the ability to

---

[5]The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Hoopai, 499 F.3d at 1076.

10

1   perform a full range of either medium, light or sedentary activities – is []

2   present."). The failure to do so was error. See, e.g., Burkhart, 856 F.2d at 1341

3   (ALJ's determination at step five that there was a sufficient number of jobs which

4   claimant could do "was both lacking in evidentiary support and made contrary to

5   the standard procedure" where ALJ had determined that claimant could not

6   perform the full range of sedentary or light work due to "significant mental and

7   manipulative nonexertional limitations," yet failed to obtain the testimony of a

8   vocational expert).

9        Even assuming that the Appeals Council adopted the ALJ's analysis at step

10  five (AR 3-4), the Appeals Council's non-disability determination based thereon

11  was, nonetheless, not supported by substantial evidence. Although the ALJ did

12  seek the assistance of a vocational expert at the July 2, 2010 hearing, the ALJ's

13  determination at step five that plaintiff was not disabled was erroneously based on

14  testimony from the vocational expert which, without any explanation, deviated

15  from the DOT.

16       First, the vocational expert's testimony was inconsistent with the DOT. In

17  his hypothetical question to the vocational expert, the ALJ included, among

18  others, a limitation to jobs that would require no more than occasional pushing and

19  pulling with both arms. (AR 54). The vocational expert testified that, in spite of

20  such limitation, plaintiff (or a hypothetical person with plaintiff's characteristics)

21  could perform the occupations of assembler, table worker, and packer/operator –

22  each of which, according to the DOT, require frequent to constant pushing and/or

23  pulling. (AR 54-55); DOT §§ 731.687-034 ("Toy Assembler"), 739.387-182

24  ("Table Worker"), 920.685-082 ("Packer Operator, Automatic"). It appears that

25  an individual who is limited to only occasional pushing and pulling with both

26  arms, however, would be precluded from such jobs.

27       Second, since neither the ALJ nor the vocational expert acknowledged that

28  there was any conflict between the DOT and the vocational expert's testimony

11

regarding the requirements of any of the three representative jobs (AR 53-56), neither the vocational expert nor the ALJ provided any persuasive explanation for the deviation.  Accordingly, the vocational expert's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's determination at step five that plaintiff could perform the occupations of assembler, table worker, and packer/operator.  Pinto, 249 F.3d at 846.  It follows that the Appeals Council's non-disability determination at step five was also not supported by substantial evidence to the extent it relied on the ALJ's unsupported findings.

Finally, the Court cannot find the error harmless as defendant points to no other persuasive evidence in the record which could support the Appeals Council's determination at step five that plaintiff was not disabled.  See, e.g., id. at 846-47 (remand warranted where ALJ found claimant not disabled at step four based "largely" on vocational expert's testimony that conflicted with DOT, neither ALJ nor vocational expert addressed the deviation, and ALJ otherwise "made very few findings"); cf. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ erred in finding that claimant could return to past relevant work based on vocational expert's testimony that deviated from DOT because ALJ "did not identify what aspect of the [vocational expert's] experience warranted deviation from the DOT, and did not point to any evidence in the record other than the [vocational expert's] sparse testimony" to support the deviation, but error was harmless in light of ALJ's alternative finding at step five, which was supported by substantial evidence, that claimant could still perform other work in the national and local economies that existed in significant numbers).

///

///

///

///

12

## V.   CONCLUSION[6]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[7]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  February 15, 2013

/s/
_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[6]The Court need not, and has not adjudicated plaintiff's other challenges to the Commissioner's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[7]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).